■ TRAVEL DYNAMICS, INC., Respondent, v DELIAN CRUISES, S. A., Appellant, et al., Defendants.—Resettled judgment of Supreme Court, New York County (Sandifer, J.), entered November 2, 1984, after jury trial before Spodek, J., in the amount of $1.6 million plus costs and interest, unanimously modified, on the law and the facts, to the extent of reducing the verdict to $663,250, and otherwise affirmed, without costs.

On December 30, 1976, plaintiff-respondent Travel Dynamics, Inc. and defendant-appellant Delian Cruises, S. A. entered into a contract under which Travel Dynamics agreed to promote 24 of Delian's 14-day cruises scheduled between December 11, 1977 and September 18, 1978. They included 10 Mediterranean cruises, five Black Sea cruises, four from France, and five from Amsterdam. Under paragraph 3 of the contract, Travel Dynamics' commission was to be 27½% of the cruise tariff for each cruise.

The critical paragraph of this agreement was paragraph 8 which states as follows: "If Delian Cruises would cancel any of the advertised cruises it undertakes to refund to Travel Dynamics all expenses incurred for the promotion of that cruise or cruises, if any, and protect commissions as per paragraph 3 on effected bookings."

By June 1977, the program was experiencing serious difficulty. Both parties claim that the other did not meet its agreed-upon passenger allotment. Nonetheless, the parties attempted to facilitate successful completion of the cruise

program. Travel Dynamics sought to eliminate the first cruise, as it was impossible to fill, to reduce the daily passenger tariff, and to modify the itinerary of the 10 Mediterranean cruises. In exchange for these modifications, Delian Cruises wanted plaintiff to change its promotional activity and to reduce its commission rate to 20% in return for a specified guaranteed profit to plaintiff. Plaintiff rejected these proposals. Defendant then made a "final offer" which called for a reduction in the number of cruises, plaintiff's exclusive promotion at a lower commission rate, and defendant's guaranteed right to withdraw if defendant did not achieve a certain daily net revenue.

Nonetheless, in July 1977, plaintiff informed defendant that it considered defendant's actions to be an anticipatory breach of the contract and stated that, in accordance with paragraph 8 of the agreement, it would pursue legal action. Defendant then officially withdrew its 10 Mediterranean cruises and subsequently stated that it would pay plaintiff's promotional expenses and commissions due under paragraph 8 of the contract.

Plaintiff commenced this action in August 1977 for $1.6 million for expenses, lost profits and damage to its reputation against Delian Cruises, Richard Revnes, an executive of Delian Cruises, and another defendant who was dismissed from the action prior to trial. Defendant counterclaimed for $1.7 million. After the action was commenced, plaintiff secured a single substitute vessel which was available for three cruises. Some 699 passengers agreed to sail on the substitute vessel for the same price. In connection therewith, plaintiff received a 25% commission from the ship owner, other than defendant.

After trial, the jury returned a verdict in favor of plaintiff for $1.6 million. Defendant-appellant's counterclaim and the action as against Richard Revnes were dismissed. A review of the record indicates that the damages awarded are excessive.

We modify and reduce the verdict to $663,250 based on the following calculation: (a) a $10,000 deposit made by the plaintiff in June 1977 for the Mediterranean cruise program; (b) $42,000, representing the 2½% differential between the agreed-upon 27½% commission and the mitigated 25% commission received for the 699 passengers who sailed on the substitute vessel, for which plaintiff received substituted payment; (c) $550,000 for lost profit, equal to 20% commission for 1,200 other passengers claimed to have been reserved for defendant's 24 cruises and who never sailed on the substitute vessel; and (d) $61,250, representing promotional expenses.

The jury awarded plaintiff $124,000 for promotional expenses. Included in those expenses were two figures of $48,144 and $15,606, representing salary, overhead and fringe benefits, incurred prior to December 30, 1976, the date of the contract. The time period up until December 30, 1976 is prior to the execution of the subject agreement and, therefore, is not recoverable. Therefore, the total promotional expense damage figure of $124,000 is reduced by $63,750 (representing the combined total of $48,144 and $15,606), which brings the total promotional expense damage element to $61,250. Concur—Kupferman, J. P., Sandler, Carro, Fein and Milonas, JJ.